**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPENCER UTZ, CHRISTINA MARTORANA, and QUANNISHA DAVIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ONCE UPON A FARM, PBC,<br><br>Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Spencer Utz, Christina Martorana, and Quannisha Davis ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendant Once Upon a Farm, PBC ("Once Upon a Farm" or "Defendant"), for the false and misleading advertising of its Once Upon a Farm Tractor Wheels, Organic Toddler Soft-Baked Bars, in all flavors, quantities, and varieties (the "Products").

## INTRODUCTION

1. This class action aims to hold Once Upon a Farm responsible for misleading marketing "Toddler" oat bars in an inherently unsafe condition. The Products are so dangerous and defectively designed and constructed that the U.S. Food & Drug Administration ("FDA") recalled the Products on October 30, 2026.

2. The FDA announced that it "received several reports that describe toddlers (ages 1.5-2.5 years) suffering complete airway obstruction with the inability to breathe after consuming the [P]roduct. When chewed, the [P]roduct reportedly forms a dry, sticky mass that standard chocking interventions – including back blows and the Heimlich maneuver – may fail to dislodge. Some reported choking incidents have required emergency response intervention and hospital observation."[1] The FDA warned consumers "not to buy or serve Once Upon A Farm Tractor Wheels, Toddler Soft-Baked Bars" due to the "potentially fatal choking hazard.[2] Consumers were warned to "not buy or serve any flavor of the [Products]" and instructed to "immediately throw it away."[3] The call, warnings, and instructions to throw away the Products "applies to all flavors, quantities, and varieties, including all lots codes and expiration dates."[4]

3. The Products are all effectively identical soft chew bars (other than minor flavor differences) purportedly designed to be consumer by toddlers. The Products come in flavors such as 1) Strawberry, Pumpkin & Beet, 2) Apple, Sweet Potato & Spinach, 3) Banana, Pumpkin &

---

[1] https://www.fda.gov/food/alerts-advisories-safety-information/fda-advises-consumers-not-buy-or-serve-once-upon-farm-tractor-wheels-organic-toddler-soft-baked-bars

[2] *Id.*

[3] *Id.*

[4] *Id.*

Cauliflower, as well as variety and sampler packs containing various combinations of these flavors.[5] Other than the flavor differences, the design, marketing, labeling, and packaging of the Products is materially identical.

4. Upon being forced to recall the Products by the FDA, Defendant immediately went into public relations damage control mode. For instance, Defendant's announcement of the recall misleadingly downplayed the dangers that the Products posed, stating that "[n]o injuries have been reported to date" from consumption of the Products.[6] This is completely false, as the FDA announced that multiple toddlers suffered "complete airway obstruction with the inability to breathe after consumer the product" and "required emergency response intervention and hospital observation."[7] It also put out a press statement recognizing that it breached consumers' trust: "We know that parents place their trust in us every time they buy one of our products. We fell short of that, and that is why we are taking these aggressive actions."[8]

5. The FDA's initial announcement and Defendant's various announcements also provided consumers with mixed messages concerning what they needed to do, and whether any refunds were available. The FDA's very first announcement on October 30, 2026 told consumers that they "should immediately throw [the Product] away," without mentioning any potential to receive a refund.[9] Defendant's announcement that same day told consumers instead that they should

---

[5] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/once-upon-farm-recalls-all-lots-and-varieties-tractor-wheels-organic-toddler-soft-baked-bars-due#recall-announcement

[6] *Id.*

[7] https://www.fda.gov/food/alerts-advisories-safety-information/fda-advises-consumers-not-buy-or-serve-once-upon-farm-tractor-wheels-organic-toddler-soft-baked-bars

[8] https://www.businesswire.com/news/home/20261030258031/en/Once-Upon-a-Farm-Announces-Recall-and-Reformulation-of-Tractor-Wheels-Due-to-Potential-Choking-Hazard

[9] https://www.fda.gov/food/alerts-advisories-safety-information/fda-advises-consumers-not-buy-or-serve-once-upon-farm-tractor-wheels-organic-toddler-soft-baked-bars

"return the product to location of purchase for a full refund or contact care@uponafarm.com."[10] This undoubtedly resulted in scores of consumers throwing away all remaining inventory of the Products upon seeing the FDA announcement, resulting in them not being able to get any refund if they happened to later hear that they could return the Products to the location of purchase.

6. The recall is also woefully inadequate for several other reasons. First, although Defendant's primary instruction is to have consumers "return the Products to the location of purchase," most retailers are *not* offering refunds but instead instructing consumers to contact the *manufacturer*. This practice leads to many consumers giving up and throwing away any leftover products. Second, the announcement does not say what Defendant will actually do for those consumers that "contact care@uponafarm.com." Third, neither the retailers nor Defendant are offering any refunds for Products that have already been thrown away (including pursuant to FDA instructions) or consumed. That is, for virtually all Products that Defendant has sold over the past several years, it is not offering a single dollar in refunds. In effect, Defendant retains tens of millions in revenue that it made through the sale of the defective Products without any compensation or refunds due to its duped consumers. Fourth, even for those consumers Defendant may refund, it is not offering to compensate them for their statutory damages owed under consumer protection statutes such as New York's Gen. Bus. Law §§ 349 ($50 per unit sold) and 350 ($500 per unit sold), *et seq*., Oregon Unlawful Trade Practices Act, O.R.S 646.605 *et seq*. ($200 per unit sold), and the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq.* ($1500 per unit sold).

7. The sale of the Products has been incredibly lucrative for Defendant. The Products accounted for approximately 18 percent of Defendant's year-to-date sales.[11] With estimated annual

[10] https://www.businesswire.com/news/home/20261030258031/en/Once-Upon-a-Farm-Announces-Recall-and-Reformulation-of-Tractor-Wheels-Due-to-Potential-Choking-Hazard

[11] https://finance.yahoo.com/healthcare/articles/once-upon-farm-recalls-tractor-201244073.html

net sales of between $290-335 million, the Products alone accounted for over $50 million net sales annually.[12]

8. The labeling and advertising of the Products leaves no question that the Products, when sold, were not suitable for their sole intended purpose: to be consumed by toddlers. First, the word "Toddler" appears in the name of the Product, expressly representing and warranting to consumers that the Products can be safely consumed by "toddlers."




[12] *See id.*




9. Second, the imagery on the front labeling and packaging is explicitly geared towards small children, using pictures of a tractor and small farm animals, vegetables, and fruits in the style often seen in toddler books.

10. Third, the back label strongly reinforces the toddler messaging. The back labels states "TODDLER," as a standalone word on the top right of the box, in bold, capitalized letters, highlighted by a contracting background. The box also states, "Where Good Eaters Grow. Sign it with me now: The wheels on the tractor go round and round, fruits and veg, whole grain oats. The wheels on the tractor go round and round, all around the farm," again playing off the common "Wheels on the Bus" song sang by toddlers for decades. The label also states, "Signs That Your Little Farmer Is Ready to Dig In:", followed by "They stand up with support," "They self-feed with fingers," "They bite through various textures," and "They have back teeth to chew," alongside

corresponding imagery, including a standing toddler in diapers. Again, all of these statements and images reinforce the central promise that the Products are safe and intended to be consumed by toddlers. By toddlers are not "Ready to Dig In" to the Products regardless of whether the "stand up with support" and can "self-feed with fingers," as the Products cannot be consumed by toddlers whatsoever. Collectively, the front and back label images and representations are referred hereto as the "Labeling Claims." The FDA has instructed parents that instead of little toddler hands, these Products belong in the trash. A depiction of the back label is presented below:



11. Plaintiffs are filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

13. The Court has personal jurisdiction over Defendant because it is a Delaware corporation with a principal place of address and headquarters in this District, located at 2111 San Pablo Ave STE 2216, Berkeley, CA 94702.

14. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District, and because Defendant has its principal place of address and headquarters in this District.

**PLAINTIFFS**

15. Plaintiff Spencer Utz is an individual residing in Tigard, Oregon. Plaintiff Tigard may be referred to later in this complaint as an "Oregon Plaintiff." Routinely within the past two years, Plaintiff Utz purchased the Products, often multiple Products per week, from multiple retail locations near his home in Oregon, including from Whole Foods and New Seasons. Plaintiff purchased the Products for his toddler son. It was crucial that the Products were able to be chewed and consumed safely by toddlers to Plaintiff Utz, as his son has cerebral palsy and has trouble chewing. Plaintiff Utz still has several of the Products in his possession that have not been consumed, and are now worthless given that the FDA has instructed consumers to throw them away and not serve them to children. However, he no longer has the vast majority of the Products

he purchased over the past two years, and there is no conceivable method to obtain a refund for those Products. Prior to purchasing the Products, Plaintiff relied on the Labeling Claims expressing that the Products are for "toddlers" and reinforcing that they are appropriate and safe for his toddler child.

16. Plaintiff Christina Martorana is an individual residing in Dix Hills, New York. Plaintiff Martorana may be referred to later in this complaint as a "New York Plaintiff." Routinely within the past two years, Plaintiff Martorana purchased the Products from multiple retail locations near her home in New York, including from Whole Foods. Plaintiff purchased the Products for her toddler children. It was crucial that the Products were able to be chewed and consumed safely by toddlers to Plaintiff Martorana. Plaintiff Martorana no longer has any of the Products she purchased over the past two years, and there is no conceivable method to obtain a refund for any of the Products she purchased. Prior to purchasing the Products, Plaintiff relied on the Labeling Claims expressing that the Products are for "toddlers" and reinforcing that they are appropriate and safe for her toddler children.

17. Plaintiff Quannisha Davis is an individual residing in Washington, DC. Plaintiff Davis may be referred to later in this complaint as a "Washington, DC Plaintiff." Routinely within the past six months, Plaintiff Davis purchased the Products near her home in Washington, DC, including at Safeway. Plaintiff purchased the Products for her toddler child. It was crucial that the Products were able to be chewed and consumed safely by toddlers to Plaintiff Davis. Plaintiff Davis no longer has any of the Products she purchased over the past six months, and there is no conceivable method to obtain a refund for any of the Products she purchased. Prior to purchasing the Products, Plaintiff relied on the Labeling Claims expressing that the Products are for "toddlers" and reinforcing that they are appropriate and safe for her toddler children. Plaintiff

Davis's toddler experienced difficulty swallowing, and choking, when eating the Products on several occasions, but did not require medical attention.

18. Each Plaintiff remains interested in purchasing the Products at issue, and will purchase the Products again if they are correctly labeled and advertised. However, they cannot know for certain whether the false labeling has been or will be corrected. The composition of the products may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiffs will be unable to make informed decisions about whether to purchase the subject Products. Plaintiffs have no way of knowing whether Defendant will adequately reformulate the Products to make the Products' Labeling Claims accurate and truthful, such that the Products in fact could be consumed by toddlers. Plaintiffs are further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

19. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

## DEFENDANT

20. Defendant is a Delaware corporation based in California. Defendant manufactures, advertises, distributes, and sells the subject Products nationwide, including in California, Oregon, and New York. Each of the subject Products includes Defendant's name on the label. Defendant is responsible for the labeling of the subject Products, and their formulation. The Products' labels, product packaging, and formulation were designed, conceived, and created in California.

## FACTUAL ALLEGATIONS

21. **Products at Issue:** Defendant's Products that Defendant sells at retail to consumers nationwide. The Products come in flavors such as 1) Strawberry, Pumpkin & Beet, 2) Apple, Sweet

Potato & Spinach, 3) Banana, Pumpkin & Cauliflower, as well as variety and sampler packs containing various combinations of these flavors. The Products include all lot codes and all expiration dates. The Products include the following:

**Tractor Wheels – Strawberry, Pumpkin & Beet**

- 5 count - Net Wt. 3.35 oz (95g) - UPC 81000351261
- 10 count - Net Wt. 6.7 oz (190 g) - UPC 810003512932

**Tractor Wheels – Apple, Sweet Potato & Spinach**

- 5 count - Net Wt. 3.35 oz (95g) - UPC 81000351260
- 10 count - Net Wt. 6.7 oz (190 g) - UPC 810003512840

**Tractor Wheels – Banana, Pumpkin & Cauliflower**

- 5 count - Net Wt. 3.35 oz (95g) - UPC 81000351262

**Tractor Wheels (Variety Pack) – Strawberry, Pumpkin & Beet/Apple, Sweet Potato & Spinach**

- 20 count – (10) Apple, (10) Strawberry - Net Wt. 13.4 oz (380g) - UPC 810003512918

**TW 30 Ct Variety Pack – Stawberry, Pumpkin & Beet (10ct)/Apple, Sweet Potato & Spinach (10ct), Banana, Pumpkin & Cauliflower (10ct)**

- 30 count - Net Wt. 20.1 oz (570g) - UPC 810003512925

**Organic Baby & Toddler Snack Sampler Packs – Online Only – containing 5 count cartons of Tractor Wheels along with other Baby and Toddler Snack products**

- Organic Baby & Toddler Snack Sampler 9 count - Contains 3 - 5 count cartons of tractor wheels all three flavors - Case 10810003513670
- Organic Baby & Toddler Snack Sampler 12 count - Contains 3 - 5 count cartons of tractor wheels all three flavors - Case 10810003513694
- Organic Ultimate Snack Sampler 15 count - Contains 3 - 5 count cartons of tractor wheels all three flavors - Case 10810003513687

22. **Relevant Time Period:** The deceptive labeling and packaging at issue here was consistent during the last few years, at least.

23. **Misrepresentations and Omissions at Issue:** the labeling of each of the Products states that the Products are suitable for toddlers, including all of the Labeling Claims.

24. The front and back labels of the Products omit any mention of the fact that the Products are not suitable to be consumed by toddlers and that they pose a serious and potentially fatal choking hazard if consumed by toddlers.

25. **How/Why The Labeling Is Misleading:** Consumers are misled by the Labeling Claims and omissions because they believe that the Products are suitable to be consumed by toddlers, and that they can do so safely. Consumers place great value on the Products purportedly being suitable for toddlers, and are misled by the above misrepresentations and Defendant's omission of the fact that the Products are unreasonably dangerous and cannot be consumed by toddlers. The Products would have been worth substantially less to consumers had they known, and had Defendant disclosed on the Products' labels, that the Products cannot be consumed by toddlers. Indeed, should they have been properly labeled, the Products would have been worthless.

## CLASS ACTION ALLEGATIONS

26. Plaintiffs bring this action on behalf of all people in the following classes and subclasses:

Nationwide class: all people in the United States who purchased a subject Product for personal or household use during the last four years.

Oregon class: all people in Oregon who purchased a subject Product for personal or household use during the last four years.

New York class: all people in New York who purchased a subject Product for personal or household use during the last four years.

Washington, DC class: all people in Washington, DC who purchased a subject Product for personal or household use during the last four years.

27. Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

28. Specifically excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

29. ***Numerosity***. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

30. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

- Whether the Products can be safely consumed by toddlers;
- Whether the Products are defective;
- Whether the Products' packaging has the tendency or capacity to deceive or confuse a reasonable consumer;
- Whether the Labeling Claims are material and misleading;
- Whether Defendant is liable to Plaintiffs and Class members under the causes of action alleged in this complaint; and
- Whether Plaintiffs and Class members are entitled to any of the forms of relief they seek in this action.

31. ***Typicality***. The claims of the Plaintiffs are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

32. ***Adequacy***. Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Plaintiffs have no interests that are antagonistic to those of the Class.

33. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

34. Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

35. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

## FIRST CLAIM FOR RELIEF
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

36. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

37. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class.

38. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

39. Plaintiffs allege a claim under the unfair and unlawful prongs.

40. Defendant's conduct constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

41. Plaintiffs also allege an "unlawful" claim on the basis and to the extent that Defendant's conduct violates any of the other causes of action herein.

42. As a direct and proximate result of Defendant's unfair and unlawful practices, Plaintiffs and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

43. Plaintiffs and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

44. Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

45. Plaintiffs seek all relief available under the UCL.

**SECOND CLAIM FOR RELIEF**

**Violation of Oregon Unlawful Trade Practices Act**
**O.R.S. 646.605 *et seq.***

46. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

47. The Oregon Plaintiff brings this cause of action individually and on behalf of the Oregon subclass.

48. The Oregon Unlawful Trade Practices Act ("OUTPA") prohibits persons from engaging in trade practices declared unlawful under ORS 646.608.

49. Persons that suffer an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act, or practice declared unlawful under ORS 646.608 may bring an action to recover actual damages or statutory damages of $200, whichever is greater. ORS 646.638(1).

50. The Oregon Plaintiff is a "person" under ORS 646.605(4).

51. Defendant is a "person" under ORS 646.605(4).

52. Defendant engages in "trade" or "commerce," including when it sells the Products with the Labeling Claims, within the meaning of ORS 646.605(8) because it advertises, offers, or distributes goods, including in a manner that directly or indirectly affects the people of Oregon.

53. The OUTPA prohibits an unfair, deceptive, or abusive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby. Without limitation, the OUTPA outlaws Defendant to:

- Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.
- Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another.

- Concurrent with tender or delivery of any real estate, goods or services fails to disclose any known material defect or material nonconformity.

54. Defendant violated each of these subsections by advertising the Products with the Labeling Claims and failing to disclose that the Products are cannot be consumed by toddlers and are a potentially deadly hazard. As discussed in this Complaint, the Labeling Claims, and Defendant's omissions, are false and misleading, and they are material and important to consumers. Consumers were in fact deceived by the Labeling Claims and omissions.

55. The Oregon Plaintiff and the Oregon class members suffered ascertainable losses as a result of Defendant's unfair and deceptive practices, in that they purchased Products that they would not have purchased had they known the truth. They are entitled to recover $200 per class member plus prejudgment interest, attorneys' fees and costs, and punitive damages.

## THIRD CLAIM FOR RELIEF

**Violations of District of Columbia Consumer Protection Procedures Act ("CPPA")**
**D.C. Code § 28-3901, *et seq.***

56. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

57. The Washington, DC Plaintiff brings this cause of action individually and on behalf of the Washington, DC subclass.

58. The CPPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

59. The Products that Defendant provides consumers are for personal, household, or family purposes and therefore are consumer goods.

60. Defendant, in the ordinary course of business, supplies consumer goods and services and therefore is a merchant under the CPPA. D.C. Code § 28-3901(a)(1)(2).

61. Defendant's customers receive consumer goods for personal, household, or family uses and are therefore consumers under the CPPA. D.C. Code § 28-3901(a)(3).

62. Defendant's practices described herein are "trade practices" within the meaning of the CPPA because they are an act that does or would create, make available, provide information about, or directly or indirectly solicit or offer or effectuate a sale or transfer of goods. D.C. Code § 28-3901(a)(6).

63. The CPPA prohibits misleading and deceptive trade practices in connection with the offer, sale, and supply of consumer goods and services. D.C. Code § 28-3904.

64. Reliance is not a requirement under the CPPA.

65. The CPPA makes it illegal to, among other things:

- (1) Represent that goods or services have a source, sponsorship, approval, certification, licensure, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
- (4) Represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
- (5) Misrepresent as to a material fact which has a tendency to mislead;
- (7) Fail to state a material fact if such failure tends to mislead;
- (8) Use innuendo or ambiguity as to a material fact, which has a tendency to mislead;
- (10) Advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered;

66. Defendant's sale of the Products with the Labeling Claims and omissions violated the CPPA. Defendant's use of the Labeling Claims and omissions is false and misleading. The Labeling Claims and omissions are material to consumers and Plaintiffs.

67. Defendant's misleading acts or practices harm consumers in the District of Columbia. Plaintiff and the D.C. class members purchased the Products based on the reasonable belief that they were a product that could safely be consumed by toddlers. That was not true. Had Plaintiffs and the Class members known the truth, they would not have purchased the Products, or paid less for them, or bought them on different terms.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**Violations of New York General Business Law § 349**

68. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

69. The New York Plaintiff brings this cause of action individually and on behalf of the New York subclass.

70. GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

71. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

72. New York class members are consumers who purchased products from Defendant for their personal use.

73. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

74. The foregoing deceptive acts and practices were directed at consumers.

75. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

76. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

77. As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

78. The New York Plaintiffs seek all available relief under GBL § 349.

**FIFTH CLAIM FOR RELIEF**

**Violations of New York General Business Law § 350**

79. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

80. The New York Plaintiff brings this cause of action individually and on behalf of the New York subclass.

81. GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

82. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 350.

83. Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

84. Plaintiff and the New York class members are consumers who purchased products from Defendant for their personal use.

85. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

86. The foregoing deceptive acts and practices were directed at consumers.

87. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 350.

88. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

89. As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

90. The New York Plaintiffs seek all available relief under GBL § 350.

**SIXTH CLAIM FOR RELIEF**

**Unjust Enrichment**

91. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

92. Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and their respective state subclasses against Defendant.

93. Each Plaintiff asserts this cause of action under the laws of California, or, in the alternative, the state where they are domiciled.

94. To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

95. Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

96. Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

97. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product could not be consumed by toddlers and posed a choking hazard. This caused injuries to Plaintiffs and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

98. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiffs and the Class Members.

99. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

100. Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

101. As a direct and proximate result of Defendant's actions, Plaintiffs and the Members of the Classes have suffered in an amount to be proven at trial.

102. Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

103. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a) For an order certifying the Classes and naming Plaintiffs as the representatives of the Class or Classes;

b) For an order declaring Defendant's conduct violates the statutes referenced herein;

c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper; and

h) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: November 17, 2026

Respectfully submitted,

**SMITH KRIVOSHEY, PLLC**

By: */s/ Yeremey O. Krivoshey*
Yeremey O. Krivoshey

Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiffs and the Putative Classes*